# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| PACIFICORP, an Oregon corporation,<br><br>Plaintiff,<br>vs.<br><br>JACOBSEN CONSTRUCTION COMPANY, INC., a Utah Corporation,<br><br>Defendant. | MEMORANDUM DECISION AND ORDER<br><br>Case No. 2:18-CV-00936-DAK<br><br>Judge Dale A. Kimball |

This matter is before the court on Defendant Jacobsen Construction Company, Inc.'s Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The court held a hearing on the Motion on May 2, 2019. At the hearing, Defendant was represented by Julianne P. Blanch and Alan S. Mouritsen, and Plaintiff was represented by Rick L. Rose and Kristine M. Larsen. The court took the matter under advisement. The court considered carefully the memoranda and other materials submitted by the parties, as well as the law and facts relating to the Motion. Now being fully advised, the court issues the following Memorandum Decision and Order granting Defendant's Motion to Dismiss.

## BACKGROUND

PacifiCorp is an Oregon corporation with its principal place of business in Portland, Oregon and does business in Utah under the name Rocky Mountain Power. PacifiCorp is the successor in interest to Utah Power & Light ("UPL"). Jacobsen Construction Company, Inc. ("Jacobsen") is a Utah corporation with its principal place of business in Salt Lake City, Utah. In the 1970s, Jacobsen was part of a joint venture known as Jelco-Jacobsen with Jelco Incorporated. In 1972, UPL hired and entered into a contract (the "Contract") with Jelco-

Jacobsen[1] to build a power plant complex (the "Huntington Plant") in Emery County, Utah. UPL hired Jacobsen to be the general contractor for the Huntington Plant, which included the responsibility of organizing, planning, managing, directing, and scheduling the Huntington Plant's construction work. Pursuant to the Contract, Jacobsen was in charge of hiring all subcontractors, technical workers, and laborers. Additionally, Jacobsen had the responsibility of establishing and maintaining the Huntington Project Safety Program to ensure that Jacobsen and its subcontractors were in compliance with state and federal safety standards, including the Williams-Steiger Occupational Safety and Health Act ("OSHA"), as well as implementing protocols to prevent accidents and injuries to employees. To fulfill these obligations, Jacobsen employed a full-time safety engineer to make daily tours of the jobsite to check for any unsafe working conditions.

Among other things, the Contract contained indemnification provisions in which Jacobsen was required to indemnify UPL (now PacifiCorp) against any and all claims, liabilities, obligations, and causes of action for injury to or death of any person. For example, § II.11 of the Contract provides:

> [Jacobsen] agrees to indemnify [PacifiCorp] and the Engineer against and hold [PacifiCorp] harmless from any and all claims, liabilities, obligations, and causes of action of whatsoever kind or nature for injury to or death of any person . . . resulting from any and all acts or omissions of [Jacobsen] . . . in connection with the performance of the work covered by this contract. [Jacobsen] agrees that the public liability . . . insurance . . . which [Jacobsen] is required to maintain pursuant to Article INSURANCE hereof shall cover the obligations set forth above.

Similarly, § II.29 of the Contract states:

> C.  [Jacobsen] shall comply with all Federal . . . rules and regulations governing safety and the safe performance of the work, including but not limited to, all applicable provisions of [OSHA].

---

[1] Throughout this decision, the court will use "Jacobsen" to refer to both the company (Jacobsen Construction Company, Inc.) and the joint venture (Jelco-Jacobsen). For purposes of this Motion, the distinction between the two is immaterial.

[. . .]

> E. [Jacobsen] agrees to indemnify and hold harmless [PacifiCorp] and Engineer from and against any and all claims, liabilities, obligations and causes of action of whatsoever kind or nature as a result of failure to comply with the above safety requirements.

Moreover, pursuant to § II.12 of the Contract, Jacobsen was required to (1) procure and maintain a comprehensive liability policy to cover bodily injury and death with limits of $1,000,000 and $4,000,000 for claims arising out of Jacobsen's work on the Huntington Plant and (2) name UPL as an insured.

In April 2016, a man named Larry Boynton ("Boynton") sued PacifiCorp as the successor in interest to UPL (the "Boynton Action"). Boynton contends that he was exposed to asbestos while working at the Huntington Plant, and that his wife, Barbara Boynton, died as a result of her exposure to the hazardous asbestos fibers on Boynton's work clothes that he brought home after working. Boynton further asserts that, among other things, PacifiCorp failed to (1) provide him with a safe work environment; (2) provide him with industrial hygiene measures that would have prevented the transportation of asbestos fibers home on his clothing; and (3) warn him of the dangers of asbestos. As such, Boynton asserted claims for strict liability, negligence, and loss of consortium. Boynton claims to have been employed by Jacobsen as an electrician working at the Huntington Plant in 1973. On April 18, 2017, PacifiCorp tendered the Boynton Action to Jacobsen, but Jacobsen has not accepted PacifiCorp's tender.

In July 2018, a man named Kyle Zoellner ("Zoellner"), individually and on behalf of his deceased father's estate and heirs, filed an asbestos lawsuit (the "Zoellner Action") against PacifiCorp. Like the Boynton Action, Zoellner alleges that PacifiCorp failed to provide his father, Max Zoellner, with a safe work environment such that he was exposed to hazardous

levels of asbestos that ultimately caused his death. Zoellner claims that his father was employed by Jacobsen as an electrician and worked at the Huntington Plant during its construction. PacifiCorp also tendered the Zoellner Action to Jacobsen, but Jacobsen has declined to accept that tender.

PacifiCorp filed the instant suit on December 6, 2018, asserting breach of contract and requesting declaratory relief. Specifically, PacifiCorp alleges that under the indemnification provision of the Contract, Jacobsen is obligated to indemnify and hold harmless PacifiCorp, as successor in interest to UPL, from the claims and damages alleged in the Boynton and Zoellner Actions. PacifiCorp also avers that Jacobsen was obligated to obtain an insurance policy to cover any and all causes of action arising under the Contract's indemnification provision. Accordingly, PacifiCorp claims that Jacobsen and/or its insurer is obligated to provide a defense to PacifiCorp and pay for all legal costs, including attorneys' fees and costs, incurred in defending the Boynton and Zoellner Actions. Because Jacobsen has refused such obligations, PacifiCorp asserts that Jacobsen has breached the Contract. Moreover, PacifiCorp contends that it is entitled to a declaratory judgment decreeing that Jacobsen owes PacifiCorp indemnity from and a defense for the Boynton and Zoellner Actions.

## DISCUSSION

Jacobsen moves to dismiss PacifiCorp's claim for failure to state a claim. When considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, "all well-pleaded factual allegations in the complaint are accepted as true and viewed in the light most favorable to the nonmoving party."

*Acosta v. Jani-King of Oklahoma, Inc.*, 905 F.3d 1156, 1158 (10th Cir. 2018) (quoting *Moore v. Guthrie*, 438 F.3d 1036, 1039 (10th Cir. 2006)). Nevertheless, "the pleadings must 'contain sufficient factual matter . . . to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "To achieve 'facial plausibility,' a plaintiff must plead 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Iqbal*, 556 U.S. at 678). In addition, when jurisdiction lies in a federal district court based on diversity, the court must apply the substantive law of the forum state. *In re ZAGG Inc. S'holder Derivative Action*, 826 F.3d 1222, 1228 (10th Cir. 2016). Accordingly, the court will apply Utah substantive law.

### A. Utah Code § 78B-2-225

Actions related to improvements in real property are governed by Utah Code Ann. § 78B-2-225 (the "Statute"). Within the Statute, the Legislature included definitions for critical terms. Utah Code Ann. § 78B-2-225(1). Relevant to the present Motion, the Statute defines the terms "action," "improvement," and "provider." *Id.* § 225(1)(b), (d), (f). An "action" is defined as "any claim for judicial . . . relief for acts, errors, omissions, or breach of duty arising out of or related to the design, construction, or installation of an improvement, whether based in tort, contract, warranty, strict liability, indemnity, contribution, or other source of law." *Id.* § 225(1)(b). An "improvement" is "any building, structure, infrastructure, road, utility, or other similar man-made change, addition, modification, or alteration to real property." *Id.* § 225(1)(d). Lastly, a "provider" is defined as "any person contributing to, providing, or performing studies, plans, specifications, drawings, designs, value engineering, cost or quantity estimates, surveys, staking, construction, and the review, observation, administration, management, supervision, inspections, and tests of construction for or in relation to an improvement." *Id.* § 225(1)(f).

5

Keeping those definitions in mind, the Statute also imposes "periods of limitation and repose . . . upon all causes of action by or against a provider arising out of or related to the design, construction, or installation of an improvement." *Id.* § 225(2)(e). Specifically, it provides two statutes of repose and one statute of limitations. *Id.* § 225(3)–(4). The statute of limitations establishes that all actions not based in contract or warranty "shall be commenced within two years from the earlier of the date of discovery of a cause of action or the date upon which a cause of action should have been discovered through reasonable diligence." *Id.* § 225(3)(b). The first statute of repose states that an "action by or against a provider based in contract or warranty shall be commenced within six years of the date of completion of the improvement or abandonment of construction."[2] *Id.* § 225(3)(a); *see also Willis v. DeWitt*, 350 P.3d 250, 253 (Utah Ct. App. 2015) (holding that § 225(3)(a) is a statute of repose). Notwithstanding the statute of limitations in § 225(3)(b), the second statute of repose provides that "an action may not be commenced against a provider more than nine years after completion of the improvement or abandonment of construction." § 78B-2-225(4).

Unlike many statutes, the Utah Legislature listed specific findings within the Statute that explain the purposes behind the law. Those findings are as follows:

> (a) exposing a provider to suits and liability for acts, errors, omissions, or breach of duty after the possibility of injury or damage has become highly remote and unexpectedly creates costs and hardships to the provider and the citizens of the state;
>
> (b) these costs and hardships include liability insurance costs, records storage costs, undue and unlimited liability risks during the life of both a provider and an improvement, and difficulties in defending against claims many years after completion of an improvement;
>
> (c) these costs and hardships constitute clear social and economic evils;

---

[2] Neither party contends that the six-year statute of repose applies in this case.

6

(d) the possibility of injury and damage becomes highly remote and unexpected seven years following completion or abandonment; and

(e) except as provided in Subsection (7), it is in the best interests of the citizens of the state to impose the periods of limitation and repose provided in this chapter upon all causes of action by or against a provider arising out of or related to the design, construction, or installation of an improvement.

*Id.* § 225(2)(a)–(e). Despite these legislative findings and the periods of limitation and repose, the Statute establishes an exception in subsection (8). The exception provides that the "time limitation imposed by this section does not apply to any action against any person in actual possession or control of the improvement as owner, tenant, or otherwise, at the time any defective or unsafe condition of the improvement proximately causes the injury for which the action is brought."[3] *Id.* § 225(8).

Under this statutory framework, Jacobsen claims that PacifiCorp's action is barred under the nine-year statute of repose. More specifically, Jacobsen claims that (1) it is a "provider"; (2) the Huntington Plant is an "improvement"; and (3) PacifiCorp's claim is an "action." As such, Jacobsen contends that the Statute applies to PacifiCorp's action thereby rendering it time barred. PacifiCorp counters by asserting that the exception in subsection (8) applies because Jacobsen was "in actual possession or control" over the Huntington Plant at the time the plaintiffs in the Boynton and Zoellner Actions were injured. Jacobsen, in turn, raises three arguments to refute PacifiCorp's claim that subsection (8) saves its claims. First, subsection (8) applies to the "time limitation imposed by this section." Jacobsen asserts that "time limitation" refers only to the statute of limitations *within* the nine-year statute of repose—not the nine-year statute of repose generally. Second, PacifiCorp's claim for indemnity is not a claim for an "injury" under

---

[3] The Statute defines "person" as "an individual, corporation, limited liability company, partnership, joint venture, association, proprietorship, or any other legal or governmental entity." *Id.* § 225(1)(e).

7

subsection (8). And third, even if subsection (8) does apply, Jacobsen never exercised "actual possession or control" over the Huntington Plant.

The parties do not dispute whether § 78B-2-225 governs this action. Indeed, the court finds it authoritative. Thus, the court agrees with Jacobsen that it is a "provider," the Huntington Plant is an "improvement," and PacifiCorp's claim is an "action." Accordingly, the court must decide whether the exception in subsection (8) applies. After reviewing the statutory framework, the court concludes that PacifiCorp has not suffered the kind of "injury" covered by subsection (8), and therefore subsection (8) does not apply. As a result, PacifiCorp has failed to state a claim upon which relief may be granted. In light of that conclusion, the court need not address whether subsection (8)'s "time limitation" includes the nine-year statute of repose *and* the two-year statute of limitation or whether Jacobsen was "in actual possession or control" of the Huntington Plant at the time the Boynton and Zoellner plaintiffs' injuries occurred. Even if subsection (8)'s "time limitation" included both periods of limitation and repose and Jacobsen had "actual possession or control" of the Huntington Plant, the fact that PacifiCorp has not suffered an "injury" covered by subsection (8) precludes its application in this case.

**B. "Injury" Under Subsection (8)**

"[W]hen confronted with questions of statutory interpretation," it is the court's goal "to evince the true intent and purpose of the Legislature." *Bryner v. Cardon Outreach, LLC*, 428 P.3d 1096, 1099 (Utah 2018). "It is axiomatic that the best evidence of legislative intent is the plain language of the statute itself." *Id.* Thus, the "first step of statutory interpretation is to look to the plain language, and '[w]here statutory language is plain and unambiguous, [the court] will not look beyond the same to divine legislative intent. Rather, [the court is] guided by the rule that a statute should generally be construed according to its plain language.'" *Id.* (quoting *Garrard v.*

8

*Gateway Fin. Servs., Inc.*, 207 P.3d 1227, 1230 (Utah 2009)). Moreover, the court reads "the plain language of the statute as a whole, and interpret[s] its provisions in harmony with other statutes in the same chapter and related chapters." *Id.* (quoting *State v. Barrett*, 127 P.3d 682, 689 (Utah 2005)). Finally, even if there are multiple "competing reasonable interpretations" based on the plain language of a statute, the statute "may nevertheless be unambiguous if the text of the act as a whole, in light of related statutory provisions, makes all but one of those meanings implausible." *Id.* at 1099–1100 (quoting *Utah Pub. Emps. Ass'n v. State*, 131 P.3d 208, 221 (Utah 2006) (Parrish, J., concurring)).

The court finds that there is no ambiguity as to the meaning of the term "injury" as the Legislature employed it in subsection (8). Accordingly, the court will give effect to the Statute's plain language. In its entirety, subsection (8) states:

> The time limitation imposed by this section does not apply to any action against any person in actual possession or control of the improvement as owner, tenant, or otherwise, at the time any defective or unsafe condition of the improvement proximately causes the injury for which the action is brought.

§ 78B-2-225(8). Under a plain reading of the Statute, the court finds three independent reasons why PacifiCorp's "injury" is not the type covered by subsection (8). First, subsection (8) applies when "any defective or unsafe condition of the improvement proximately causes the injury for which the action is brought." *Id.* Here, PacifiCorp's claimed "injury" is the "cost of defense and potential judgment against it" in the Boynton and Zoellner Actions. Pl.'s Opp'n at 15. For that "injury" to constitute an "injury" for purposes of subsection (8), it must have been caused by a "defective or unsafe condition." § 78B-2-225(8). However, PacifiCorp's injury was not caused by a "defective or unsafe condition." Instead, it was caused by Jacobsen's refusal to indemnify and hold PacifiCorp harmless in the Boynton and Zoellner Actions. Had no indemnity provision existed in the Contract in the first place, then PacifiCorp would neither have a cause of action nor

9

suffered an "injury"; it would simply be paying the costs associated with mounting a defense in litigation. It follows, then, that the existence of the indemnification provision and Jacobsen's refusal to follow it constitutes the proximate cause of PacifiCorp's alleged "injury." Thus, the triggering event for subsection (8)'s application—an "injury" that is "proximately cause[d]" by a "defective or unsafe condition of [an] improvement"—is not present in this case. *Id.*

Second, PacifiCorp's "injury" resulting from Jacobsen's alleged breach of the Contract is not the kind of "injury" that is typically caused by a "defective or unsafe condition" of an improvement to real property. Rather, subsection (8) contemplates situations in which an individual suffers a tort-based injury. Indeed, under a plain reading of subsection (8), the type of "injury" that is proximately caused by a "defective or unsafe condition" of an improvement is generally one sounding in tort, i.e., bodily injury, property damage, or death. Furthermore, Utah courts have distinguished third-party indemnity claims from tort-based injury claims. *Shell Oil Co. v. Brinkerhoff-Signal Drilling Co.*, 658 P.2d 1187, 1190–91 (Utah 1983) ("A third-party action for contract indemnity from the employer is not 'on account of' an employee's injury, nor is it an action 'based upon' an employee's injury. Rather, it is an action for reimbursement based upon an express contractual obligation between the employer and the third-party plaintiff."); *see also Snyder v. PacifiCorp*, 316 F. Supp. 2d 1247, 1249 (D. Utah 2004) (affirming the court's reasoning in *Shell*).

Third, if the court were to read the term "injury" as including PacifiCorp's breach of contract claim, the claim would then be precluded based on the Statute's "actual possession or control" language. For subsection (8) to apply, Jacobsen must have been "in actual possession or control *at the time* [the] defective or unsafe condition of the [Huntington Plant] proximately cause[d] the injury for which the action [was] brought." § 78B-2-225(8) (emphasis added).

Here, as mentioned above, the "injury for which" PacifiCorp has brought this action is the "cost of defense and potential judgment against [PacifiCorp]" in the Boynton and Zoellner Actions as a result of Jacobsen's refusal to indemnify and hold PacifiCorp harmless (i.e., Jacobsen's alleged breach of the Contract).[4] *See* Pl.'s Opp'n at 15. Thus, Jacobsen must have been "in actual possession or control" at the time that PacifiCorp suffered that "injury." The time at which PacifiCorp began suffering an "injury," however, was when it was sued by the Boynton and Zoellner plaintiffs and began defending in those actions. At that point, Jacobsen was clearly not "in actual possession or control" of the Huntington Plant.[5] Therefore, even if PacifiCorp's "injury" fell within the scope of the exception, subsection (8) would nevertheless be inapplicable because Jacobsen was not "in actual possession or control *at the time*" the "defective or unsafe condition" of the Huntington Plant "proximately cause[d] *the injury*"—the cost of defense and potential judgment against PacifiCorp—"for which the action [was] brought." § 78B-2-225(8) (emphasis added).[6]

Lastly, the legislative intent contained within the Statute reaffirms the court's decision to narrowly construe the term "injury" in the context of subsection (8). Specifically, the Legislature found that "exposing a provider to suits and liability . . . after the possibility of injury or damage has become highly remote . . . creates costs and hardships." *Id.* § 225(2)(a). Such "costs and hardships include liability insurance costs" and "constitute clear social and economic evils." *Id.*

---

[4] It is clear that the injuries alleged in the Boynton and Zoellner Actions took place years ago during the construction of the Huntington Plant. It cannot be fairly said, however, that PacifiCorp suffered any alleged "injury" at that same time. Indeed, PacifiCorp did not suffer any "injury" until it began defending in the Boynton and Zoellner Actions, and the court cannot impute the timing of the Boynton and Zoellner plaintiffs' injuries to the timing of PacifiCorp's "injury."

[5] The court makes no decision as to whether Jacobsen was "in actual possession or control" of the Huntington Plant at the time the asbestos-related injuries occurred.

[6] PacifiCorp contends that to read the term "injury" in this manner renders the term "any action" superfluous. The court is unpersuaded by this argument. Here, the term "any action" must simply be read in the context of subsection (8) as a whole, which, as described above, contemplates tort-based injuries suffered by a defective or unsafe aspect of an improvement.

§ 225(2)(b)–(c).  The Legislature clearly intended to limit liability for providers years after the completion of an improvement.  The court's decision aligns with that legislative intent as it maintains the narrow scope of liability that can be imposed on providers after the various statutory time periods have expired.  With that said, the hardship experienced by PacifiCorp in this case is not lost on the court.  The court is sympathetic with PacifiCorp's efforts to enforce the Contract.  Yet, subsection (8)'s plain language renders PacifiCorp's breach of contract claim a square peg in a round hole—it simply does not fit.[7]  The court therefore concludes that PacifiCorp has not suffered the type of "injury" covered by subsection (8).  Consequently, PacifiCorp has failed to state a plausible claim for relief, and its Complaint must be dismissed.

## CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss is GRANTED, and Plaintiff's Complaint is dismissed with prejudice.

Dated this 29th day of May, 2019.

BY THE COURT:

_____
DALE A. KIMBALL
United States District Judge

---

[7] This type of case is likely one of the reasons why the Legislature included an exception in the Statute that allows parties to contract around the timing for bringing a breach of contract action.  § 78B-2-225(3)(a) ("Where an express contract or warranty establishes a different period of limitations, the action shall be initiated within that limitations period.").  But the Legislature did not add that exception to the Statute until 1999—well after the parties entered into the Contract.  1999 Utah Laws Ch. 123 (West) (H.B. 161).  Thus, while such an option may not have been known or considered at the time UPL entered into the Contract, parties that enter into construction contracts now will be well aware of that option.